UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TYNESHA M. HARTZOG,

                          Plaintiff,        11-CV-6082

              v.                            **DECISION**
                                            **and ORDER**
MICHAEL ASTRUE,
Commissioner of Social Security

                          Defendant.
_____

## INTRODUCTION

     Plaintiff Tynesha M. Hartzog ("Plaintiff"), brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Plaintiff moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12 (c)"), on the grounds that evidence in the record supports a finding of disability. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ"), denying Plaintiff's application for benefits, was erroneous because the ALJ did not give proper weight to Plaintiff's treating physician's opinion.  Plaintiff also argues that her mental impairment meets the standards for per se disability under the Act, that the ALJ failed to properly evaluate her credibility, and that the ALJ's decision relied upon flawed vocational testimony. Plaintiff seeks reversal of the Commissioner's decision,

and that the Court remand the case to the Social Security Administration for the calculation and payment of benefits.

The Commissioner moves for an order to reverse its decision and remand to the Social Security Administration for rehearing pursuant to 42 U.S.C. § 405(g).  The Commissioner concedes that the ALJ failed to adequately consider relevant expert testimony, but contends that the record does not compel the conclusion that Plaintiff is disabled.

The Court finds that the Commissioner's decision that the Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record.  Additionally, because the Court finds that the record contains persuasive proof of Plaintiff's disability, the Commissioner's request for remand and rehearing pursuant to 42 U.S.C. § 405(g) is denied, and the Plaintiff's motion for judgment on the pleadings is granted.  The case will be reversed and remanded to the Commissioner for calculation and payment of benefits as of the Plaintiff's disability onset date, June 30, 2003.

## BACKGROUND

The Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act on November 16, 2004, alleging

disability since June 30, 2003.[1]  The application was initially denied on June 21, 2005.  (Transcript of Administrative Proceedings at 133-36)(hereinafter "Tr.").  Plaintiff filed a timely request for a hearing on July 20, 2005.  (Tr. at 137).

Plaintiff then appeared, with counsel, and testified at the hearing on May 20, 2008 in Rochester, N.Y. before ALJ Michael Friedman.  (Tr. at 732-50).  In a decision dated June 27, 2008, the ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act (Tr. at 438-51).   On July 25, 2008, Plaintiff requested review of the ALJ's decision by the Appeals Council (Tr. at 463), and on November 7, 2008, the Appeals Council remanded the claim for a new hearing and decision.  (Tr. at 474-76).  In doing so, the Appeals Council ordered the ALJ to: update the evidentiary record with additional evidence of the Plaintiff's physical and mental impairments from her treating sources; obtain evidence from a psychiatric medical expert; give further consideration to the Plaintiff's maximum residual functional capacity; and obtain evidence from a vocational expert. (Tr. at 475).

A hearing was then held on June 11, 2009 before ALJ James E. Dombeck.  (Tr. at 674-731).  Vocational expert Peter Manzi also testified at the hearing.  (Tr. at 675).  A supplemental hearing was held on September 23, 2009 to obtain testimony from Dr. Ralph

---

[1]The initial application is not part of the certified record.

Sibley, a medical expert.   (Tr. at 633-73).   In a decision dated October 29, 2009, ALJ Dombeck found that Plaintiff was not disabled within the meaning of the Act.   (Tr. at 115-31).   Plaintiff requested review of the ALJ's decision by the Appeals Council on November 12, 2009 (Tr. at 113), and comments were submitted in support of her claim on September 16, 2010.   (Tr. at 19-21).   On January 11, 2011, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.   (Tr. at 13-17).   Plaintiff then filed this action.

## **DISCUSSION**

### I.   **Jurisdiction and Scope of Review**

42 U.S.C. § 405 (g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits.   When considering such claims, this section directs the Court to accept the findings of fact made by the Commissioner, provided that these findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).   Section 405 (g) limits the Court's scope of review to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards. See Monger v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1982) (finding

that a reviewing Court does not try a benefits case <u>de novo</u>).  The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." <u>Lynn v. Schweiker</u>, 565 F. Supp. 265, 267 (S.D. Tex. 1983)(citation omitted).

The Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c), asserting that the Commissioner's decision is not supported by the substantial evidence in the record, which supports a finding of disability.  Additionally, the Plaintiff argues that the ALJ erred in rendering his decision by failing to accord proper weight to Plaintiff's treating physician's opinions and failing to properly consider other relevant evidence.  Rule 12(c) permits judgment on the pleadings where the material facts are undisputed and where judgement on the merits is possible merely by considering the contents of the pleadings.  <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988).  If, after a review of the pleadings, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate.  <u>See</u> <u>Bell Atl. Corp.  v. Twombly</u>, 550 U.S. 544 (2007).  In this case, this Court finds that there is substantial evidence in the record to find that the Plaintiff is disabled within the meaning of the Social Security Act such that further review is unnecessary.  Therefore, the Plaintiff's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.

II.   **The Commissioner's decision to deny the Plaintiff Benefits is not supported by substantial evidence.**

The ALJ found that the Plaintiff was not disabled within the meaning of the Social Security Act.   In his decision, the ALJ adhered to the five step sequential analysis for evaluating Social Security Disability benefits claims, which requires the ALJ to consider:

> (1) whether the claimant is engaged in any substantial gainful work activity;
>
> (2) if not, whether the claimant has a severe impairment that significantly limits her ability to work;
>
> (3) whether the claimant's impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4; if so, claimant is considered disabled;
>
> (4) if not, the ALJ determines whether the impairment prevents the claimant from performing past relevant work; if the claimant has the residual functional capacity ("RFC") to do her past work, she is not disabled;
>
> (5) even if the claimant's impairment(s) prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

See 20 C.F.R. §§404.1520 (a) (i)-(iv) and 416.920(a)(4)(i)-(iv).

In this case, the ALJ found that (1) the Plaintiff has not engaged in substantial gainful activity since June 30, 2003; (2) the Plaintiff has the severe combination of impairments: chronic back pain, shoulder pain, major depressive disorder, and posttraumatic stress disorder ("PTSD"); (3) the Plaintiff does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (4) the Plaintiff is able to perform past relevant work as a hair stylist; and (5) the Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except with limited contact with the public.  (Tr. at 121-29).

The ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, a significant number of jobs existed in the national economy that Plaintiff could perform, and that the Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. at 129-30).  This Court finds that the ALJ's decision is not supported by substantial evidence in the record, and that there is substantial evidence in the record to find that the Plaintiff is disabled within the meaning of the Social Security Act.[2]

**A.**   **The ALJ did not afford proper weight to the opinion of Plaintiff's treating physician.**

The ALJ found that the opinion of the treating psychiatrist, Dr. Gregory Seeger, concerning Plaintiff's mental impairments, was not entitled to controlling weight.  (Tr. at 128).  The ALJ concluded that Dr. Seeger's opinion was not supported by objective

---

[2]The Plaintiff has alleged disability based on a mental impairment and back pain.  Because the Court finds Plaintiff's mental impairment sufficient on its own to support a finding of disability under the Act, the Court will limit its discussion to Plaintiff's mental impairment.

evidence and was inconsistent with the opinions of Unity Health System and Dr. Seeger's own treatment records.  (Tr. at 126, 128).

Generally, a treating physician's opinion is given controlling weight when it is well-supported by medical evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §416.927(d)(2), §416.1527 (d)(2).  The following factors must be considered when determining the weight given to a physician's medical opinion: (1) was there a treatment relationship; (2) what was the length and frequency of the treatment relationship; (3) is the treating physician's opinion supported by clinical and laboratory findings; (4) is the treating physician's opinion consistent with the record as a whole; (5) is the treating physician specialized; and (6) other factors that support or contradict the medical opinion of the treating physician. See 20 C.F.R. §416.927 (d)(3)-(6), §416.1527(d)(3)-(6).

In this case, the ALJ improperly found that the opinion of Plaintiff's treating psychiatrist, Dr. Seeger, was contradicted by the older treatment records from Unity Health System and by Dr. Seeger's own treatment records.  (Tr. at 126).  The ALJ failed to indicate what weight, if any, was given to the treating doctor, or set forth good reasons for rejecting Dr. Seeger's findings.

Dr. Seeger began serving as Plaintiff's treating psychiatrist in conjunction with the mental health therapists at Genesee Mental Health Center in July 2006.  (Tr. at 404, 624).  Dr. Seeger

diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features; rule out bipolar disorder. (Tr. at 404).  The clinical findings that support Dr. Seeger's diagnosis include appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, decreased energy, and hostility and irritability.  (Tr. at 405).

In a Psychiatric/Psychological Impairment Questionnaire dated April 2, 2007, Dr. Seeger documented that Plaintiff's symptoms and functional limitations were reasonably consistent with her physical and/or emotional impairments described in the evaluation.  (Tr. at 406).  Dr. Seeger found that Plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods; her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance; her ability to work in coordination or proximity to others without being distracted by them; her ability to complete a normal workweek without interruptions from psychologically based symptoms; her ability to interact with the general public; her ability to accept instructions and respond appropriately to criticism from supervisors; and her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (Tr. at 407-08).  Dr. Seeger also found that Plaintiff

was moderately and mildly limited in a significant number of areas, including her ability to carry out simple and detailed instructions (moderately limited), and her ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (mildly limited). (Tr. at 407-08).

Dr. Seeger opined that Plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to "withdraw . . . and/or experience exacerbation of signs and symptoms" because she had difficulty maintaining a stable mood, often got angry, and was not able to complete necessary tasks. (Tr. at 409). Dr. Seeger concluded that Plaintiff was incapable of tolerating even "low stress" work because her irritability, mood instability, and emotional lability made it difficult for her to be consistent in maintaining work duties. (Tr. at 410). Dr. Seeger opined that Plaintiff's impairments were likely to produce "good days" and "bad days" that would cause her to be absent from work, on average, more than three times per month. (Tr. at 410-11).

In September 2009, Dr. Seeger produced a narrative detailing his clinical findings in support of Plaintiff's diagnosis. (Tr. at 624). In his letter, Dr. Seeger concluded that Plaintiff is unable to work a full-time competitive job. Dr. Seeger based his assessment on his more than three-year treatment of Plaintiff, from July 13, 2006 until the then present time, and stated that his

previously   completed   Psychiatric/Psychological   Impairment Questionnaire dated April 2, 2007 remained valid.  (Tr. at 624). Dr. Seeger was consistently involved in Plaintiff's treatment at Genesee Mental Health Center (Tr. at 516, 519, 522, 528, 565), and treatment records from the Center reveal that Plaintiff was frequently angry, guarded, anxious, irritable, depressed, not sleeping well, had negative remunerations, and struggled with her mood/thoughts.  (Tr. at 509, 510, 524, 526, 527, 530, 534, 539, 540, 542, 545, 546).

Dr. Seeger's opinions were based on medically acceptable psychiatric findings and should have been given controlling weight by the ALJ as Dr. Seeger also met the other factors under 20 C.F.R. §416.927(d)(2), §416.1527 (d)(2).  As the record shows, Dr. Seeger treated Plaintiff a period of more than three years in conjunction with mental health therapists at Genesee Mental Health Center; he supported his opinions with detailed mental status findings that were consistent with the findings of other mental health providers; and he is a board-certified specialist in psychiatry.

While the ALJ maintained that Dr. Seeger's opinion was contradicted by the treatment records from Unity Health System, Plaintiff's medical records from the facility reveal no such inconsistency.  Plaintiff began receiving mental health treatment at Unity Health System in 2004.  (Tr. at 331).  There, she underwent evaluations by Rekha Shrivastava, a mental health

therapist, and a psychiatrist, Dr. Ram Rapoport.   (Tr. at 331-37; 338-42).   Plaintiff's diagnoses from Unity Health System included major depressive disorder, recurrent, mild; rule out bipolar; and depression, unspecified.   (Tr. at 330, 337, 341).   Treatment records from Unity Health System documented Plaintiff's history for depression and bipolar disorder (Tr. at 339), in addition to isolative behavior, sleeping problems, paranoia, and problems with memory and flashbacks to traumatic events.   (Tr. at 339, 340-41, 386).   The Unity Health System treatment records also documented Plaintiff's avoidance behavior, nervousness around other people, and anger.   (Tr. at 386-87, 389-90).

Thus, treatment records at Unity Health System were consistent with later findings made by Dr. Seeger.   Indeed, mental status examinations at both facilities revealed that Plaintiff had a variably sad, angry, depressed, and anxious mood (Tr. at 355, 509, and 527); fair insight, judgment, impulse control, and concentration (Tr. at 335, 509, and 527); problems with memory and flashbacks of traumatic events (Tr. at 340-41); and paranoid thoughts. (Tr. at 384, 386, and 509).   Thus, while the ALJ opined that Dr. Seeger's opinion was inconsistent with the records at Unity Health System, the evidence in the record shows otherwise.

Finally, while the Commissioner argues that the opinions from examining psychologist Dr. Thomassen, and a non-examining consultant, Dr. Toth, are sufficient contradictory evidence to

require remand for further evaluation (Def. Mem. at 4-5), the ALJ never actually indicated that he relied upon any of this evidence to justify his denial of benefits or indicate what weight he gave to these physicians.   Furthermore, in making this argument, Defendant relies only on select portions of the medical record. While Dr. Thomassen stated that Plaintiff could perform rote tasks and follow simple directions, he also opined that Plaintiff would have problems maintaining work because of problems relating with co-workers and coping with stress.  (Tr. at 347).   Dr. Thomassen diagnosed Plaintiff with post-traumatic stress disorder, and noted that allegations of psychiatric disability appeared consistent with his examination findings.  (Tr. at 347).

The Commissioner's arguments are unsupported by evidence in the record.   Indeed, the Commissioner appears to cherry pick evidence in support of his contention that the record does not warrant a finding of disability, relying on an "often-used but dubious argumentative technique of selecting facts that tend against a finding of disability . . . while ignoring [those] that are consistent with a finding of disability." Castano v. Astrue, 650 F. Supp. 2d 270, 278 (E.D.N.Y. 2009).   Further, the Commissioner fails to cite to any rationale offered by the ALJ that would justify rejecting the well-supported opinions from the Plaintiff's treating psychiatrist, Dr. Seeger.

Dr. Seeger's opinion is well-supported by the medical evidence in the record and is consistent with other substantial evidence in the record.  Accordingly, this Court finds that the ALJ did not afford proper weight to the opinion of Plaintiff's treating psychiatrist, and Dr. Seeger, which should have been afforded controlling weight in determining Plaintiff's claim of disability within the meaning of the Act.

### B.   **The ALJ improperly concluded that the Plaintiff's subjective complaints were not entirely credible.**

The ALJ found that while the Plaintiff's medically determinable impairments "could reasonably be expected to cause only some of the alleged symptoms," he concluded that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were "unsupported by the treatment record, [and were] uncorroborated, or inconsistent with the above residual functional capacity assessment." (Tr. at 124).  This Court finds that the ALJ improperly evaluated Plaintiff's testimony.

Plaintiff testified that she was unable to work due to a combination of physical and mental impairments.  (Tr. at 737). Plaintiff testified to constantly changing moods, anger and depression, an inability to concentrate, and difficulties with memory retention.  (Tr. at 739-41).  She testified to "bad moods" that would last for days, and stated that such moods would cause her to "break things" and "slam things." (Tr. at 692).  Plaintiff

testified that when she was in a bad depressive state, she could not get out of bed, became isolated, and confined herself to her room. (Tr. at 702). Plaintiff said that she would self-isolate "all the time," isolating five out of seven days per week. (Tr. at 654-55). Plaintiff described feeling "very nervous" and "very panicky" when around other people (Tr. at 699-700), she testified that she could not tolerate being around others(Tr. at 744), and stated that she never left her home unaccompanied because she was afraid of going out on her own. (Tr. at 660, 698-99, 747-48).

The ALJ rejected Plaintiff's testimony, finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (Tr. at 124). Instead, the ALJ found that Plaintiff's symptoms were unsupported by the treatment record, and were uncorroborated, or inconsistent with his residual functional capacity assessment ("RFC").[3] (Tr. at 124). However, the ALJ's conclusion is belied by the substantial evidence in the record, which supports Plaintiff's subjective complaints. The ALJ improperly rejected Plaintiff's testimony and substituted his own medical judgment in determining Plaintiff's RFC. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (holding that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . . While an [ALJ] is free to resolve

---

[3]The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1547(b) and 416.967(b) except with limited contact with the public. (Tr. at 123).

issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him")(citing <u>McBrayer v. Secretary of Health and Human Servs.</u>, 712 F.2d 795, 799 (2d Cir. 1983))(internal citations omitted); <u>see also</u> <u>Shaw v. Carter</u>, 221 F.3d 126, 134 (2d Cir. 2000)(holding that "neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion")(internal citations omitted).

Plaintiff's testimony is supported by medical records dating back as early as 2004 when Plaintiff first received treatment at Unity Health System.  During an appointment at Unity Health System on September 14, 2004, mental health therapist Rekha Shrivastava documented Plaintiff's complaints of mood swings, depression, fatigue, and frustration.  (Tr. at 332).  During the same visit, Plaintiff described feeling angry and related depressive episodes wherein she isolated herself for three days at a time.  (Tr. at 332).  A mental status examination revealed sad and angry mood, and fair insight and judgment.  (Tr. at 33).  As noted above, Ms. Shrivastava diagnosed Plaintiff with major depressive disorder, recurrent, mild; rule out bipolar; and depression, unspecified. (Tr. at 330, 337, 341).  Plaintiff's GAF score was 57.  (Tr. at 337).

During a September 23, 2004 appointment with Ms. Shrivastava, Plaintiff again expressed feeling angry, tired, depressed, and low in energy. (Tr. at 381). At her next visit on October 21, 2004, Plaintiff reported paranoia and difficulty trusting others. (Tr. at 383). Plaintiff was observed to appear guarded and eager to leave. (Tr. at 383).

Dr. Ram Rapoport of Unity Health System evaluated Plaintiff on November 3, 2004. (Tr. at 338-42). Dr. Rapoport noted Plaintiff's medical history of depression and bipolar disorder (Tr. at 339), and documented Plaintiff's reported symptoms of crying at times, feeling "down," isolative behavior, and periods of not sleeping at night. (Tr. at 339). Dr. Rapoport's mental status examination revealed problems with memory and flashbacks of traumatic events. (Tr. at 340-41). Dr. Rapoport diagnosed major depression, recurring, mild; bipolar disorder; depression; and back pain. (Tr. at 341). Plaintiff's GAF score was 57[4] (Tr. at 341), and Dr. Rapoport recommended that Plaintiff continue psychotherapy. (Tr. at 341).

---

[4]The Global Assessment of Functioning ("GAF") Scale rates an individual's overall level or psychological, social, and occupational functioning of a scale from 1 to 100. A GAF score of 51-60 denotes "[m]oderate symptoms (flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders 4th Ed. Text Revision ("DSM"), p. 32-34.

During an appointment with Ms. Shrivastava on December 9, 2004, Shrivastava noted that Plaintiff "tends to withdraw and isolate," and reported that Plaintiff "still gets paranoid about others and does not want to be around people." (Tr. at 386). Progress notes from that visit also reveal that Plaintiff's mood was "depressed" and that she "continue[d] to withdraw." (Tr. at 387). Subsequent visits to Unity Health System revealed similar findings of depressed mood, paranoia, isolative symptoms, trouble sleeping, avoidance behavior, nervousness around other people, and anger. (Tr. at 386-87, 389-90).

When Plaintiff began treatment with Dr. Seeger in July 2006, Dr. Seeger diagnosed Plaintiff with major depressive disorder, severe; rule out bipolar disorder; depressed; and chronic back and neck pain. (Tr. at 404). Plaintiff's GAF score was 50[5] and she was given a "guarded" prognosis. (Tr. at 404). Clinical findings included appetite disturbance with weight change, sleep disturbance, mood disturbance, emotional lability, anhedonia or pervasive loss of interests, feelings of guilt or worthlessness, difficulty thinking or concentrating, decreased energy, and hostility or irritability. (Tr. at 405). Plaintiff's primary symptoms were mood instability, intense irritability, anger, emotional lability, anhedonia, changes in sleep, and appetite

---

[5]A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM, p. 34.

disturbance.  (Tr. at 406).  As noted above, Dr. Seeger opined that Plaintiff was incapable of tolerating even low stress work because of her irritability, mood instability, and emotional lability that made it difficult for her to maintain any work duties.  (Tr. at 410).

Patricia Connolly, LMSW, evaluated Plaintiff at Genesee Mental Health Center on December 12, 2007.  (Tr. at 508).  Plaintiff presented with mood instability, intense irritability, anger, and fluctuating levels of depression.  (Tr. at 508).  Plaintiff complained of loss of interests, excessive sleep during the day and staying awake at night, only leaving the house when "mandatory," and isolative behavior.  (Tr. at 508).  A mental status examination revealed paranoid thought content, labile and angry mood, fair insight, and fair concentration.  (Tr. at 509).  Ms. Connolly noted that Plaintiff was ambivalent about treatment, and diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and rule-out bipolar disorder.  (Tr. at 509).  Plaintiff's GAF score was 55.  (Tr. at 509).

During a February 4, 2008 appointment, the therapist noted that Plaintiff was anxious and exhibited only fair insight, judgment, and impulse control.  (Tr. at 523).  On February 8, 2008, Plaintiff complained of depressed mood, irritability, and poor sleep.  (Tr. at 524).  Plaintiff was prescribed Paxil and Trazodone.  (Tr. at 524).  At her next therapy visit on March 4,

2008, Plaintiff was found to be depressed and had fair insight. (Tr. at 526).  A mental status examination on March 18, 2008 revealed a depressed and anxious mood, and fair insight, judgment, impulse control, and concentration.  (Tr. at 527).

Dr. Seeger evaluated Plaintiff on March 21, 2008.  (Tr. at 528).  Plaintiff complained of sedation related to her medications for back pain, as well as ongoing mood swings, irritability, and anger outbursts.  (Tr. at 528).  A mental status exam revealed anxiety, rapid speech, and mild depression.  (Tr. at 528).  Dr. Seeger diagnosed bipolar disorder, mixed, and he prescribed Trazodone, Prozac, and Geodon.  (Tr. at 528).

During an April 1, 2008 visit, Plaintiff complained of anger and depression.  (Tr. at 530).  No significant changes were found in Plaintiff's symptoms or examination findings at regular therapy visits through August 2009.  (Tr. at 331-561, 565-67, 608-09, 611, 614-17, and 620-21).  On September 2, 2009, Dr. Seeger completed a narrative regarding Plaintiff's treatment.  (Tr. at 624).  Dr. Seeger indicated that Plaintiff continued to treat with him "on and off" since July 2006 for major depressive disorder and bipolar disorder, and opined that Plaintiff continued to be limited by her mental impairments.  (Tr. at 624).

Thus, Plaintiff's testimony concerning her mental impairment is well-supported by substantial medical evidence in the record from doctor's visits, therapy sessions, and psychiatric

evaluations.   Therefore, this Court finds that the ALJ erred in evaluating Plaintiff's testimony concerning her symptoms, and that he should have properly credited Plaintiff's subjective complaints.

### C.   **The record as a whole clearly establishes Plaintiff's disability.**

A remand for the calculation of benefits is appropriate when the record provides persuasive proof of disability and a remand for rehearing would serve no purpose.   Lane v. Astrue, No. 09-CV-6046, 2010 U.S. Dist. LEXIS 27254 *30-*1 (W.D.N.Y. March 22, 2010)(citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980)).   Here, the Court finds that there is persuasive proof of disability in the record such that remand for rehearing would serve no purpose.   As explained above, there is consensus in the record that Plaintiff had marked limitations in dealing with daily mental tasks, sufficient to support a finding of disability.

Plaintiff's allegations concerning her disability were further supported by the testimony of medical expert Dr. Ralph Sibley, who testified that Plaintiff's mental impairments satisfied the criteria for _per se_ disability under Medical Listing 12.04(A)(1)(a)(b)(c)(e)(f)(g)(h) and (C)(2), as well as Medical Listing 12.06(A), (B), and (C) based upon his review of the record and her symptoms, including the fact that she never left her home unaccompanied.   (Tr. at 660, 665).

Medical Listing 12.04 provides the criteria for affective disorders. According to the Medical Listing, affective disorders are those:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders are met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

To meet or equal an affective disorder under Medical Listing 12.04, an individual must meet at least four of the symptoms under 12.04(A) that result in at least two of the criteria under 12.04(B)[6], *or* satisfy one of the criteria under 12.04(C).

Dr. Sibley found that Plaintiff met the following listing criteria under 12.04(A), as supported by the record: a medically documented persistence, either continuous or intermittent of a depressive syndrome characterized by anhedonia or pervasive loss of interests in almost all activities (noted in Tr. at 405 and 508); appetite disturbance with change in weight (noted in Tr. at 345, 405); sleep disturbance (noted in Tr. at 339, 389, 405, 508, and

---

[6]An individual satisfies the 12.04(A) and (B) requirements if she suffers from at least four of the symptoms under 12.4(A), and those symptoms result in at least two of the criteria under 12.04(B): (1) marked restrictions of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation; each of extended duration.

524); decreased energy (noted in Tr. at 405); feelings of guilt or worthlessness (noted in Tr. at 405); and difficulty thinking or concentrating (noted in Tr. at 405, 409, and 527).

Dr. Sibley also found that in addition to the criteria under 12.04(A), Plaintiff satisfied the criteria for Listing 12.04(C)(2):

> C. Medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate. (Tr. at 665).

Dr. Sibley also found that Plaintiff met the requirements under Medical Listing 12.06. (Tr. at 665). Medical Listings 12.06 is classified as:

> Anxiety-related disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level or severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

Dr. Sibley found that Plaintiff satisfied the requirements under 12.06(A) in that she suffered from a medically documented persistence, either continuous or intermittent of recurrent

obsessions or compulsions which are a source of marked distress (noted in Tr. at 331, 345, 381, and 389-90), and recurrent or intrusive recollections of a traumatic experience, which are a source of marked distress (noted in Tr. at 331, 339, 340-41, 384, and 345). Dr. Sibley also found that, when considering Plaintiff's testimony regarding not leaving her home unaccompanied, Plaintiff met the requirements of 12.06(C),[7] which indicates that the anxiety disorder has resulted in a complete inability to function independently outside the area of one's home. (Tr. at 665).

Dr. Sibley opined that Plaintiff's mental impairments were such that "even a minimal increase in mental demands or change in the environment would be predicted to cause [Plaintiff] to decompensate." (Tr. at 665). Dr. Sibley further testified that his opinions were based both on the opinions of Plaintiff's treating psychiatrist, Dr. Seeger, as well as his review of Plaintiff's treatment record as a whole. (Tr. at 668-69).

The ALJ dismissed Dr. Sibley's testimony that Plaintiff met Medical Listings 12.04 and 12.06, finding that there was no evidence or corroboration to support Plaintiff's testimony that she never left her house alone. (Tr. at 121). The ALJ found instead that Plaintiff had moderate restrictions in social functioning and concentration, persistence or pace and further found there was no evidence of episodes of decompensation or evidence that any of the

---

[7]The "B" and "C" criteria for Medical Listing 12.06 are identical to those in Medical Listing 12.04.

"paragraph C" criteria of the Medical Listings were satisfied. (Tr. at 121-22).

The Commissioner maintains that the ALJ properly rejected Dr. Sibley's testimony, arguing that the testimony was properly discredited because it was based upon the opinions of treating psychiatrist, Dr. Seeger, whose opinions the ALJ also rejected. (Def. Mem. at 4). However, Dr. Sibley testified that he relied on the entire record in making his determination.  (Tr. at 668-69). Additionally, the Commissioner's characterization of Plaintiff's medical records as revealing normal status findings  (Def. Mem. at 4) is incorrect.  The record shows, as detailed above, that Plaintiff was frequently observed to have anxious, irritable, angry and depressed moods (Tr. at 524, 524, 527, 530, and 531), in addition to a host of other problems, such as  paranoia, isolative symptoms, avoidance behavior, and nervousness around other people. (Tr. at 386-87, 389-90).

The ALJ also failed to discuss any of the findings of the treating psychiatrist, Dr. Seeger, which established that Plaintiff satisfied the required criteria of Medical Listings 12.04 and 12.06 as discussed above.  Further, contrary to the ALJ's findings, there are repeated references in the record to Plaintiff's isolative behavior and not wanting to leave her home for days on end (Tr. at 331, 339, 387, and 508), which support Dr. Sibley's testimony that Plaintiff also satisfies the (C) criteria of the Listings.  Thus,

the Court finds that the ALJ erred in finding that the Plaintiff did not satisfy the criteria for a finding of <u>per</u> <u>se</u> disability under Medical Listings 12.04 and 12.06.  There exists substantial evidence in the record to support a finding of <u>per</u> <u>se</u> disability under Medical Listings 12.04 and 12.06.

Accordingly, this Court finds the record contains persuasive proof of disability such that remand for further proceedings would serve no purpose.  Accordingly, the case is remanded to the Commissioner for payment of benefits as of Plaintiff's onset disability date.

<u>**CONCLUSION**</u>

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Plaintiff benefits is not supported by substantial evidence in the record.  Therefore, I grant the Plaintiff's motion for judgment on the pleadings.  The Commissioner's motion is denied. This case is remanded to the Commissioner for calculation and payment of benefits as of June 3, 2003.

**ALL OF THE ABOVE IS SO ORDERED.**

<u>  s/Michael A. Telesca  </u>
MICHAEL A. TELESCA
United States District Judge

Dated:      Rochester, New York
            September 25, 2012